(No. 31332.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* NICKOLAS LACOCO *et al.,* Plaintiffs in Error.

*Opinion filed May 18, 1950—Rehearing denied September 18, 1950.*

304

CHARLES A. BELLOWS, of Chicago, for plaintiff in error Nickolas LaCoco, and RICHARD DEVINE, of Chicago, for plaintiff in error Harry Wagner.

IVAN A. ELLIOTT, Attorney General, of Springfield, and JOHN S. BOYLE, State's Attorney, of Chicago, (JOHN T. GALLAGHER, RUDOLPH L. JANEGA, EDMUND H. GRANT, and WILLIAM BRUMLIK, all of Chicago, of counsel,) for the People.

Mr. JUSTICE WILSON delivered the opinion of the court:

The defendants, Nickolas LaCoco and Harry Wagner, together with Albert Smyth and Ray Auburn, were indicted in the criminal court of Cook County for the burglary of a currency exchange. Auburn died before the trial and Smyth was granted a severance from LaCoco. Wagner, upon being denied a severance from LaCoco, stood trial with him and a jury found each of them guilty of burglary, as charged. Defendants received like sentences of imprisonment in the penitentiary for terms of not less than forty nor more than fifty years, and now prosecute this writ of error.

The record discloses that, in the early hours of the morning of October 24, 1947, four men broke into the rear of a machine shop at 1775 North Cicero Avenue, Chicago, and, with tools brought for the purpose, proceeded to dig a hole in the wall to the adjoining currency exchange at 1777 North Cicero Avenue until only the plaster wall in the currency exchange remained standing. As Stanley Suftko, Sr., the owner of the machine shop, and his two employees, Stanley Suftko, Jr., and Angelo Mattiola, reported for work at various times between eight and ten o'clock in the morning, each was ordered into a small washroom at the rear of the shop at gun point by one or more of the burglars, all of whom wore caps and gloves and had handkerchiefs tied across the lower part of their faces.

About twenty minutes to eleven, the employees of an armored money truck service made a routine delivery of $6000 to the currency exchange, unlocked an inner part of the safe, and returned about ten minutes later with an additional $1000 in change. After the money truck left for the second time, three of the masked burglars burst through the wall into the currency exchange. Margaret McLaughlin, the cashier, who was alone at the time, ran behind a partition and then fled to the washroom, while the men, overlooking only $300, quickly gathered up almost $10,000 and retreated through the hole in the wall. The escape was made through the rear door of the machine shop, and down a passageway leading to an alley.

Edward Morris, the operator of a gasoline station fifty feet south of the currency exchange, reported that, at half past seven in the morning in question, he investigated an unfamiliar 1946 powder blue Plymouth four-door sedan on his lot, and noticed it had a Pinkerton sticker pasted on one window. Although he had noted it at the time, he was unable to recall the license number at the trial. According to Morris, a single person removed the car from his property about ten-thirty the same morning. Police detective Charles Fitzgerald testified that he interviewed Morris about two hours after the burglary and then checked all automobile licenses starting with the number 1-7c9 and containing seven figures.

About half past one in the morning of December 10, 1947, Fitzgerald and his partner, Sylvester Hanrahan, arrested LaCoco, Wagner, Auburn and two other men in a 1947 powder blue Plymouth four-door sedan bearing the license number 1-709-930 and having a small Pinkerton sticker on a side window. LaCoco admitted ownership of the car. Shortly after the prisoners had been removed to the detective bureau, LaCoco was brought into the office of Timothy J. O'Connell, the sergeant in charge of the special assignments division, for interrogation. Sometime

before daybreak, both the time and the circumstances being in dispute, LaCoco made an oral confession implicating Wagner, Smyth and Auburn as his accomplices. Subsequently, LaCoco repeated his confession to police detective James S. Kennedy in a small room off O'Connell's office, while, unknown to him, Wagner was in the main office listening to the conversation with earphones attached to a hidden microphone. Before being booked and transferred to the county jail on December 12, LaCoco and Wagner and their companions were viewed by various witnesses, either in O'Connell's office on the third floor or in a theater-like room on the eleventh floor, on four different occasions. Mrs. McLaughlin and two men, Edgar Ketchum and Casey Slow, viewed the prisoners on the afternoon of December 10, and each of the three men who worked in the machine shop saw them at separate showups on the evening of December 11. At each showup, LaCoco repeated his confession in varying detail. Several of the civilian witnesses agreed LaCoco had stated that he was not present when the money was divided and that, upon learning $10,000 had been taken, he felt the others had cheated him because he had received only $1700 as his share of the venture.

Over the objections of counsel, the court permitted Mrs. McLaughlin, the first witness, to recount LaCoco's confession to the jury before granting LaCoco a preliminary hearing on the question whether his confessions were voluntary. At the preliminary hearing, LaCoco testified that, upon being arrested, Fitzgerald kicked him twice and struck him in the jaw and that, after being brought to O'Connell's office, O'Connell and Fitzgerald took him into the adjoining small room and, with his hands handcuffed behind his back, interrogated him and punched him in the stomach for forty-five minutes until he lost consciousness. He added that a ten-minute respite was followed by another thirty minutes of the same treatment and a second loss of consciousness. Afterwards, while in O'Connell's main

office, Kennedy discharged a shotgun and blew out a window. LaCoco further testified that, after repeating his innocence, O'Connell, Fitzgerald and Hanrahan and several unidentified officers removed him to the eleventh floor where they strung him up, with his wrists handcuffed behind his back and his feet barely touching the floor, and beat him into unconsciousness five times in about five hours, with blows to the stomach and on the back of the neck. According to defendant LaCoco, upon being revived for the fifth time, he told them he would confess to anything and that he made all his later confessions on information supplied by O'Connell and in fear of additional beatings. On cross-examination, LaCoco stated the beatings resulted in nothing more than red splotches on his stomach and he did not see fit to call this condition to the attention of the examining physician when he entered the county jail two days later.

The police officers gave an entirely different version as to the circumstances surrounding LaCoco's original confession. O'Connell testified that he, alone, took LaCoco into the small room and that, after informing LaCoco of the extent of their knowledge of his recent activities, LaCoco voluntarily made an oral confession and named his accomplices. O'Connell was corroborated by officers Kennedy and John S. Glon who remained in the main office and listened to the conversation with earphones. Both Fitzgerald and Hanrahan denied that LaCoco had been mistreated when arrested, and all the officers testified that Fitzgerald did not accompany O'Connell and LaCoco into the small room and that LaCoco was in the small room for only thirty or forty-five minutes. Kennedy admitted he accidentally discharged a jammed shotgun in O'Connell's office, but he and all the others, O'Connell, Fitzgerald and Hanrahan, in particular, denied that LaCoco was beaten in the small room off O'Connell's office or that he was later taken to the eleventh floor and strung up for four or five hours until he confessed. At the conclusion of the preliminary hearing, the

court ruled that LaCoco's confessions were admissible in evidence.

At the same preliminary hearing, testimony was also presented as to whether LaCoco's confessions were admissible against Wagner. Wagner testified that when he first heard LaCoco confess to Kennedy he stated LaCoco was a maniac and crazy and it appeared that he was trying to get somebody in trouble. Several detectives testified that, on this occasion, Wagner called LaCoco foul names and said, "How did I ever get tied up with a dirty stool pigeon like that," or words to this effect. As to all subsequent confessions, Wagner and LaCoco agreed that Wagner always said LaCoco was crazy, while witnesses for the prosecution, both police officers and civilians, were in substantial agreement that Wagner, when asked about LaCoco's statement, replied, "You heard what he said." The court also ruled that LaCoco's confession was admissible against Wagner.

The testimony on these disputed issues heard by the jury was substantially the same as that given at the preliminary hearing. While only O'Connell and Fitzgerald testified as to the voluntary character of LaCoco's original confession, the prosecution used additional civilian witnesses to testify as to LaCoco's subsequent confessions and Wagner's remarks in connection therewith. LaCoco and Wagner appeared as witnesses in their own behalf and repeated their testimony previously given out of the presence of the jury.

The only other testimony of importance was that relating to identification. Suftko, Sr., stated the one man he noticed was short and small. His son, who had the best opportunity to observe all the burglars, testified that one was over six feet tall, two were built like himself, and one was a "little bitty guy." He added that two of the men were about the same size and shape as LaCoco and Wagner. Mattiola stated he saw one of the men for a moment, that he was short and had black hair and beady eyes, and that LaCoco looked like the man he saw. Suftko, Sr., his son

and Mattiola testified that, as the burglars made their escape through the machine shop, they heard something drop on the floor and one of the fleeing men said, "Pick that up, Nick." Before the defense had introduced any evidence, the prosecution was permitted to reopen its case in chief to call Carson Lusader as a witness. Lusader was the fourth witness whose name had not been furnished to defendants and, while no objections were made to the other three witnesses, objections were made to Lusader's testimony. Lusader testified that, on the morning of the burglary, he saw three men hurrying down the alley behind the currency exchange, one of whom was carrying a white sack. From his position underneath an automobile on which he was working, he could only see the left side and back of the head of one of the men. He testified he believed this man was LaCoco. On cross-examination, he stated he had seen the same man almost daily for two months prior to the burglary, that LaCoco was not the man he saw, and that LaCoco looked like the man but he could not be positive. Lusader's testimony is recounted primarily because its admission is assigned as error.

The principal contention made by LaCoco is that the evidence does not show that he is guilty beyond a reasonable doubt. In this connection, he argues that his confession was obtained by duress, that oral confessions should be received with great caution, and his confessions are wholly uncorroborated. Contrary to LaCoco's contention, his confession was admissible in evidence against him. While it is true that, in a preliminary hearing upon the admissibility of a confession, the burden is upon the prosecution to show that it was voluntarily made, (*People* v. *Thomlison,* 400 Ill. 555; *People* v. *Davis,* 399 Ill. 265,) it is equally true that the court is not required to be convinced of its voluntary character beyond a reasonable doubt. (*People* v. *Weber,* 401 Ill. 584; *People* v. *Borrelli,* 392 Ill. 481.) Although there may be evidence of the use of force to

induce a confession, yet, if there are sufficient facts to show the confession was voluntarily made, the admission of the confession does not constitute an abuse of judicial discretion. (*People* v. *Ardelean*, 368 Ill. 274; *People* v. *Albers*, 360 Ill. 73.) Of LaCoco's several confessions, his first is the controlling one, the presumption being that the repetition of a confession is the product of the same circumstances which produced the original confession. (*People* v. *Sweetin*, 325 Ill. 245.) Where the defense produces evidence that a confession was obtained by coercion, all the persons who had control over the defendant and are allegedly involved in the use of coercion should be produced, if possible, and examined before the confession is admitted. (*People* v. *Ickes*, 370 Ill. 486; *People* v. *Arendarczyk*, 367 Ill. 534.) The prosecution called all five police officers named by LaCoco as having been present during his interrogation and alleged beatings and, in view of the ample evidence that the confession was voluntary, the decision of the trial court as to its admissibility will not be disturbed.

LaCoco's confessions, being properly admissible, constituted competent evidence of his guilt and, while his testimony as to police brutality could not be ignored, the jurors were entitled to believe the testimony of O'Connell and Fitzgerald that LaCoco's original confession was voluntarily made. Verbal confessions are of low evidentiary value only because the testimony of witnesses as to verbal admission is frequently subject to imperfection and mistake. (*Marzen* v. *People*, 173 Ill. 43.) On the other hand, where, as here, the testimony of numerous witnesses shows that the confessions were deliberately made and there is substantial agreement as to the details of the oral statements, oral confessions constitute satisfactory evidence. *People* v. *Rischo*, 262 Ill. 596.

In addition, LaCoco's confessions were not only accurate as to details but were also corroborated by circumstantial

evidence. Suftko, Sr., and both of his employees testified one of the burglars was called "Nick." Three witnesses stated that one of the men was small, Mattiola testified LaCoco looked like the small man he saw and Suftko, Jr., added that LaCoco was about the same size and shape as one of the four men. Likewise, it was shown that an automobile identical in all respects to LaCoco's, except that it was reported as a 1946 model, was parked near the currency exchange on the morning of October 24, 1947, and was driven away shortly before the robbery occurred. While, admittedly, the circumstantial evidence, standing alone, is not sufficient to support a conviction, we are impelled to the conclusion that LaCoco's repeated confessions, coupled with and corroborated by the circumstantial evidence, fully sustain the judgment of conviction.

Wagner also contends the evidence against him is insufficient to sustain a conviction and further contends his alleged admissions and LaCoco's confessions were incompetent as to him. The rule is, of course, that accusations of guilt made in the presence of a defendant and denied by him are not admissible in evidence. (*People* v. *Kozlowski,* 368 Ill. 124; *People* v. *Harrison,* 261 Ill. 517.) Likewise, the confession of a codefendant made in the presence of an accused and denied by him is incompetent against the accused. (*People* v. *Hanley,* 317 Ill. 39.) The response to an accusation of guilt that the accuser is crazy constitutes a denial. (*People* v. *Wilson,* 298 Ill. 257.) Consequently, whether Wagner's statements and LaCoco's confessions were admissible against Wagner depends, first, upon whether Wagner invariably replied that LaCoco was crazy or said, instead, "That dirty lousy ———— of a stool pigeon. How did I get mixed up with him?" and, afterwards, in response to O'Connell's questions, "You heard what he said," and, secondly, if he did make the last statements attributed to him by the prosecution's witnesses, whether these statements constituted admissions. In our

view, it becomes unnecessary to determine these questions. Assuming that Wagner did make the statments attributed to him by the prosecution's witnesses and that LaCoco's confessions were admissible against him, this is the only evidence connecting Wagner with the crime. Not only are Wagner's statements extremely weak as admissions, but admissions standing alone are insufficient to sustain a judgment of conviction. (*People* v. *Hobbs*, 400 Ill. 143; *People* v. *Nitti*, 312 Ill. 73.) The same is true of LaCoco's confession in its application to Wagner, the uncorroborated testimony of an accomplice being always regarded with grave suspicion and to be acted upon with great caution. (*People* v. *Rendas*, 366 Ill. 385; *People* v. *Bugg*, 344 Ill. 440.) The evidence against Wagner consists of his highly questionable admissions and the oral and subsequently repudiated confessions of LaCoco and, not being corroborated by any other fact or circumstance, is insufficient to sustain his conviction.

Other assignments of error made by LaCoco remain to be considered. LaCoco first contends that it was error to admit his confession in evidence, over his objections, before holding a hearing on its admissibility. Plainly, a defendant is entitled to a preliminary hearing on the question of whether his confession was voluntary before the confession is introduced in evidence. (*People* v. *Frugoli*, 334 Ill. 324; *People* v. *Barardi*, 321 Ill. 47.) The error complained of is harmless, however, because the trial court subsequently and correctly determined that LaCoco's confessions were admissible in evidence.

LaCoco also asserts the trial court erred in permitting four witnesses to testify whose names were not on the list of witnesses furnished to defendants. Since objection was made only to Lusader, the last of the four unlisted witnesses, the assignment of error must be limited to his testimony, alone. The rule is firmly established that it is within the discretion of the court to allow a witness to testify

whose name is not on the list furnished to the defendant and this discretion will not be reviewed unless it appears the defendant has sustained the burden of showing surprise or prejudice. (*People* v. *Weisburg,* 396 Ill. 412; *People* v. *Nixon,* 371 Ill. 318.) In view of the circumstance that defendants were afforded an opportunity to talk to Lusader, did not ask for a continuance, or make any showing of prejudice and proceeded with the trial, it cannot be said that the trial judge abused his discretion in permitting Lusader to testify.

LaCoco next contends the court erred in refusing to confine the jury on the eighth day of the trial after an allegedly prejudicial article, consisting of five sentences, appeared on page thirty-nine of a local daily newspaper. In part of one sentence it was reported that on the preceding day the three employees in the machine shop testified that LaCoco confessed to an unsolved murder in a suburb of Chicago. This part of the article was absolutely false, as the jurors might well have realized, had they read the article. On the other hand, there is no showing in the record that any juror saw the article and this court will not set aside a verdict on the bare assumption that the defendant was prejudiced. *People* v. *Konkowski,* 378 Ill. 616; *People* v. *Rogers,* 303 Ill. 578.

Other and less significant assignments of error made and argued by defendant LaCoco have been carefully reviewed and found to be without merit.

No prejudicial error having intervened in the trial of LaCoco and the evidence being sufficient to sustain the judgment of conviction against him, the judgment against him is affirmed. The judgment against Wagner is reversed and the cause remanded.

*Affirmed as to LaCoco; reversed and remanded as to Wagner.*