People of the State of Illinois, Plaintiff-Appellee,
v. Lester J. Colson, Defendant-Appellant.

Gen. No. 50,412.

First District, Fourth Division.

May 13, 1966.

447

Gerald W. Getty, Public Defender of Cook County, of Chicago (James J. Doherty, Frederick F. Cohn and Brian L. Crowe, Assistant Public Defenders, of counsel), for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Stuart P. Shapiro, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE ENGLISH delivered the opinion of the court.

## CHARGE
Voluntary manslaughter.[1]

## DEFENSE AT TRIAL
Justifiable use of force in defense of person.[2]

---

[1] Ill Rev Stats (1963), c 38, § 9–2(b):
A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify or exonerate the killing under the principles stated in Article 7 of this Code, but his belief is unreasonable.

[2] Ill Rev Stats (1963), c 38, § 7–1:
A person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct

## JUDGMENT

After a bench trial, the court found defendant guilty and imposed a sentence of three to ten years.

## POINTS RAISED ON APPEAL

(1)    The charge was not proved beyond a reasonable doubt.

(2)    The sentence is excessive.

## EVIDENCE

### Testimony of State Witnesses

*Edward Kendrick* and *Vander Mayo*

These witnesses substantially corroborated each other's testimony. They went to defendant's auto shop at 5:30 p. m. on October 4, 1963, and joined a round robin checker game with defendant and decedent, James Jones. After about an hour the game was changed to dice. Whiskey and beer were consumed; defendant drank beer. Defendant lost all his money and asked decedent to lend him four dollars. Decedent declined on the ground that defendant already owed him money. Defendant denied this and called decedent a liar; decedent called defendant a liar. Defendant slapped decedent in the face. Decedent rose from his chair and advanced toward defendant, who backed up and removed a pistol from his belt. Decedent continued to advance.

Kendrick told defendant: "Don't shoot, leave it go, let it go today." At that time Kendrick, who is 6'3½" tall, was standing close to defendant and decedent, both of whom were about 5'10" tall and weighed about 160 pounds. Defendant "snapped" the gun two or three times, but it didn't go off. Then he fired a shot which hit the

is necessary to defend himself or another against such other's imminent use of unlawful force. However, he is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another, or the commission of a forcible felony.

449

floor. Then he fired two more shots at decedent. Kendrick was close enough so that the powder blast blinded him temporarily. Decedent did not have anything in his hands and had not been seen to "go into his pockets."

Decedent walked to an overhead door, lifted it, staggered out into the alley about ten feet, and fell. At defendant's suggestion the three men lifted decedent into a car, and defendant then left. Kendrick and Mayo, picking up a police escort en route, drove decedent to Bethany Hospital where he was pronounced dead on arrival.

### Testimony of Defendant

Defendant got into an argument with decedent when the latter refused to lend him any money. Decedent "started at" him, whereupon defendant slapped decedent to keep him away. Defendant then stepped away and drew his gun. The big front door was open. Defendant backed up against a car in the garage, and Kendrick ran between decedent and defendant, telling him not to shoot. Decedent kept coming till he was about two feet away. Defendant then fired one shot at the floor and "two quick shots" with the gun pointed at decedent. The gun did not misfire.

Defendant's only intention was to stop decedent, not to kill him. Defendant is 5'6" tall and weighs 130 pounds. Decedent was bigger, and usually carried a knife, but defendant saw nothing in decedent's hands at the time. After Kendrick and Mayo took decedent's body away, defendant went home. He thought he left the gun on the fender of the car, but he could have put it in a garbage can or just thrown it away. (The gun was never found.)

### OPINION

■■ (1) The credibility of the witnesses is essentially a matter for the trial court. There is evidence

which, if believed, establishes proof of defendant's guilt beyond a reasonable doubt.

Defendant was the aggressor verbally as well as physically. Decedent had no weapon and uttered no threat. This being true, and with the large garage door open, defendant's backing up to a car does not, as his argument implies,[3] give his conduct the status of retreat from a wrongdoer. People v. Durand, 307 Ill 611, 139 NE 78.

■ Under all the circumstances[4] there existed no reasonable ground for defendant to believe that it was necessary for him to shoot decedent to prevent imminent death or great bodily harm to himself. Ill Rev Stats (1963), c 38, §§ 9–2(b) and 7–1, set forth above in footnotes 1 and 2.

■ (2) As to the alleged excessiveness of the sentence imposed, we do not consider that it "constitutes a substantial departure from the fundamental law and its spirit and purpose, or that it is not proportioned to the nature of the offense. . . . Upon a review of the entire record we cannot say that the trial court abused its discretion in this matter." People v. Miller, 33 Ill2d 439, 444, 445, 211 NE2d 708.

## DECISION

The judgment of the Circuit Court is affirmed.

Affirmed.

DRUCKER, P. J. and McCORMICK, J., concur.

---

[3] Defendant's brief: "What more could the defendant have done? He retreated."

[4] Among which was the fact that Kendrick, a very large man, was attempting to prevent the fracas.