THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LORRAINE REED, Defendant-Appellant.

(No. 58532;

First District (2nd Division)—October 8, 1974.

Diane L. Crawford, of Northwestern Legal Assistance Clinic, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., and John B. Adams, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE HAYES delivered the opinion of the court:

Lorraine Reed, defendant, was found guilty after a bench trial of the crime of murder in violation of section 9—1 of the Criminal Code (Ill. Rev. Stat. 1971, ch. 38, par. 9—1). She was sentenced to a term of 14 to 20 years. Defendant appeals, arguing that the evidence was insufficient to establish her guilt beyond a reasonable doubt, and that the trial court erred in admitting evidence procured in violation of her fifth amendment right against self-incrimination.

At trial, Catherine Hendrix testified that on 4 October 1971, at approximately 7 P.M., she was at her home at 120 N. Hermitage, Chicago, Illinois. Present with her were: her children (two daughters); defendant; Leo Jones; Edward Jones; and the deceased, Ezekiel Brewer. Defendant, who had come to Chicago on the day before from Wichita, Kansas, and

who was staying with the witness, was in the back bedroom (which was the childrens' bedroom). Mrs. Hendrix was playing cards in the kitchen. Ezekiel Brewer became "pesty" and she told him to go into the childrens' bedroom and lie down. A short time later, she heard what sounded like balloons bursting. Mrs. Hendrix checked with her children and found that they were not making the noise. She then asked Leo Jones to check the back bedroom of the apartment. Leo Jones went into the back bedroom and returned, saying that defendant shot Zeke. She immediately telephoned the police. Mrs. Hendrix also testified that, during the day, irritable words had passed between deceased and defendant owing to a mix-up as to the availability of clothing for a baby who was the one of defendant's children whose father was the deceased, but there had been no big argument or fight.

Leo Jones, defendant's brother, testified that on 4 October 1971, at 7 P.M., he was at Catherine Hendrix's home at 120 N. Hermitage, Chicago, Illinois. Defendant was in the back of the apartment, while he was playing cards in the kitchen with Edward Jones and Catherine Hendrix. Deceased was then in the kitchen. One Pinky Henderson left the apartment. A short time later, deceased left the kitchen area. He then heard what sounded like a firecracker or a popping noise. Catherine Hendrix checked with her children and found that they had not made the noise. The witness then went to the back bedroom where he observed Ezekiel Brewer lying face up on the bed. Defendant was the only other person in the room and was standing at the north end of the bed. Upon his entry into the room, defendant said, "I did it." He went up to Brewer and observed a bullet wound of the head. The police were called. Jones testified that, prior to the shooting, defendant and deceased had exchanged some words about one of defendant's children whose father was the decedent. Jones testified that, after the police officers arrived, one of them asked him to be present while they questioned defendant. The police asked defendant about the gun and she stated that she had thrown it out the window.

On cross-examination, Leo Jones admitted that on the evening of the incident, he had signed a statement at the police station stating that, when he had entered the room, defendant had told him that she didn't do it, it was an accident; that he had asked her what she meant; that she kept saying the same thing over and over that it was an accident. But Jones then testified on further cross-examination that he in fact had told the police officers that defendant had kept saying: "I did it."

Edward Jones testified that on 4 October 1971, sometime after 7 o'clock, he was in the apartment at 120 N. Hermitage, Chicago, Illinois, playing cards with Pinky Henderson, Leo Jones, and Catherine Hendrix.

At approximately 7 P.M., Pinky Henderson left the apartment. Thereafter, he heard a popping sound similar to a firecracker. Catherine Hendrix checked to see if her children had made the sound but they said they hadn't. Catherine then said: "It's too quiet back there", referring to the room in which defendant and deceased were, and she asked Leo Jones to go back and check. Leo Jones then went into the back bedroom and returned stating that defendant had shot Brewer. The witness went into the back bedroom and saw Brewer lying on the bed. Prior to the shooting, defendant and Brewer had exchanged some words.

Pinky Henderson testified that on 4 October 1971, she was at the apartment of Catherine Hendrix at 120 N. Hermitage, Chicago, Illinois, playing cards with Catherine Hendrix, Leo Jones, and Edward Jones. Shortly before 7 P.M., she left the apartment. She returned to the apartment approximately 1 hour later and there were police officers present at that time.

Dr. Jerry Kearns, a pathologist for the Coroner of Cook County, testified that, on 5 October 1971, he conducted a pathological examination on the body of Ezekiel Brewer. The cause of death of Ezekiel Brewer was a bullet wound of the head and brain. There were no powder burns on the deceased, which indicated he had been shot from a distance of beyond 3 feet.

Lorraine Reed, defendant, testified in her own behalf that she had known Ezekiel Brewer for 4 or 5 years. She has a child, the father of whom is Ezekiel Brewer. On 4 October 1971, she had a conversation with Brewer, who asked if he could keep the child until she went back to Kansas and picked up her other children. She agreed to this procedure. Defendant testified that she then went into the back bedroom to lie down. The next thing she remembered was when the police woke her up. At that time Leo Jones was saying that she had said she killed Ezekiel Brewer. She testified that she did not tell Leo Jones that she threw the pistol out the window. Defendant denied ever shooting Ezekiel Brewer.

Leo Jones was called to testify for the defense. He testified that during his lifetime he had seen several instances of unusual or abnormal behavior by defendant. Defendant would go out of the house without shoes or a coat and walk 15 blocks during the winter. She would not pay her bills. Defendant has nine children, one of whom is in a mental institution in the State of Kansas, and a second of whom has recently been in a mental institution.

Defendant made an offer of proof that, if Ruby Bynum were called to testify, she would state that the grandfather of defendant had been placed in a mental institution, where he died. Further, a child of defen-

dant is presently hospitalized in a mental institution in the State of Kansas, and another child of defendant had recently been hospitalized in a mental institution. She had observed defendant throughout her entire life and observed conduct on the part of defendant that was unusual. In her opinion, there were times when defendant did not know the difference between right and wrong.

In rebuttal, Thomas O'Halleran, a Chicago police investigator, testified that on 4 October 1971, he was assigned to investigate the shooting of Ezekiel Brewer. He interviewed defendant that evening for a period of approximately 3 hours, first for a short time at the apartment and then at the police station. During the entire interviw, defendant was coherent and answered all questions in an intelligent and responsive manner.

Also in rebuttal, Robert Reifman, a psychiatrist, testified that he is the assistant director of the Psychiatric Institute of the Circuit Court of Cook County. On 20 January 1972, he had examined defendant, and in his opinion defendant was legally sane at the time of the alleged offense.

Defendant's first contention is that the evidence was insufficient to establish her guilt beyond a reasonable doubt. Defendant urges that the evidence did not demonstrate that she killed Ezekiel Brewer wilfully and voluntarily, since the only link to her shooting of the deceased was her own admission that she did it, which admission, however, also involved a statement that it was an accident.

■■ The intent necessary to constitute the act of taking a life as murder may be found in the character of the act itself and in the attendant circumstances. (*People v. Spagnola* (1970), 123 Ill.App.2d 171, 260 N.E. 2d 20.) In the case at bar, defendant was in the back bedroom when Brewer left the kitchen and entered the room. A short time later, several loud popping sounds were heard by people in the apartment. Leo Jones entered the bedroom and observed Brewer lying on the bed with a bullet wound in his head. Defendant was the only other person in the room and was standing at the foot of the bed. Defendant said to Leo Jones: "I did it." Brewer died of a gunshot wound to the head, fired from a distance of over 3 feet. This evidence, although circumstantial, was sufficient to establish that defendant voluntarily and wilfully did the acts, the known strongly probable or likely result of which was to destroy another's life or do great bodily harm to him.

■■ Defendant also argues that the trial court erred in failing to adopt a reasonable hypothesis of innocence consistent with the facts of the case. To warrant a conviction on circumstantial evidence, the facts proved must clearly establish the guilt of the accused so as to exclude every reasonable hypothesis of innocence. (*People v. Puckett* (1972), 6 Ill.App.3d 206, 285 N.E.2d 258.) However, the trier of fact is not re-

quired to search out a series of potential explanations compatible with innocence and elevate them to the status of reasonable doubt. *People v. Arndt* (1972), 50 Ill.2d 390, 280 N.E.2d 230.

■■ Defendant urges that the evidence presented at trial showed at least two reasonable hypothesis of innocence. First, that defendant accidentally killed the deceased; and second, that the deceased was shot by Pinky Henderson. The State's evidence presented at trial demonstrated that defendant and deceased had had an irritable discussion over one of defendant's children whose father was the deceased. Defendant went into the back bedroom. A short time later, the deceased entered the room. Thereafter, popping sounds were heard by several people in the apartment. Leo Jones then went into the bedroom and found the deceased lying on the bed with a bullet wound in the head. Defendant was the only other person in the room and was standing at the foot of the bed. Upon Jones' entry into the room, defendant said to him: "I did it." Later she stated to a police officer in the presence of Leo Jones that she had thrown the gun out the window of the apartment. The pathologist testified that the deceased had died of a bullet wound to the head and brain, fired from a distance of over 3 feet. At trial, defendant testified that she was asleep in the back bedroom and was awakened only when the police came in. She denied ever making the statements attributed to her by Leo Jones and denied shooting the deceased. The only testimony as to the accidental nature of the shooting was in a portion of a statement which Leo Jones had given to the police at the police station on the night of the incident in response to a police request that he tell them what had occurred (which statement was used on cross-examination of Leo Jones to impeach the credibility of his trial testimony on his direct examination), and in the testimony of Edward Jones on cross-examination that, when the police had arrived at the apartment, he thought defendant had said it was an accident. But, on further cross-examination of Leo Jones, he insisted that what he had in fact told the police was that defendant kept saying "I did it" when he entered the bedroom. And defendant's trial testimony that she was asleep and had not shot deceased at all contradicted the testimony of Edward Jones. This conflicting testimony presented a matter of credibility which was for the trial judge to determine. (*People v. Catlett* (1971), 48 Ill.2d 56, 268 N.E.2d 378.) We conclude that defendant's theory that the killing was an accident was not a reasonable hypothesis based on the credible evidence in this case.

■■ Similarly, defendant's argument that Pinky Henderson could have shot the deceased before leaving the apartment is not supported by the evidence. Several State's witnesses testified that Pinky Henderson had left

the apartment prior to the popping sounds. Upon hearing the popping sounds, Leo Jones entered the bedroom and found the deceased lying on the bed, and defendant was then the only other person in the room. A review of the entire record leads us to the conclusion that the evidence was sufficient to support defendant's conviction beyond a reasonable doubt.

Defendant next argues that the trial judge erred in relying upon the testimony of Leo Jones as to the statements of defendant. Defendant urges that oral admissions by an accused are of low evidentiary value and constitute satisfactory evidence only where the testimony of numerous witnesses shows that the oral statements were deliberately made and that there is substantial agreement as to the details of the statements. Defendants cite *People v. LaCoco* (1950), 406 Ill. 303, 94 N.E.2d 178, in support of their proposition, but we think it questionable whether the case holds *"only* where" etc.

Be that as it may, the basic contention of defendant in this appeal is that the evidence is wholly circumstantial and that the State has failed to prove beyond a reasonable doubt that defendant shot the deceased "voluntarily and wilfully" or "intentionally". The trial judge in finding defendant guilty of murder admittedly relied on the testimony of Leo Jones, the brother of defendant, that defendant had said to him "I did it" and had said to a police officer in his presence that she had thrown the gun out the window. Defendant contends that uncorroborated oral confessions or admissions have a low probative value and that an inference of intentional killing from the statement "I did it," is not a necessary inference and is insufficient to prove the offense of murder beyond a reasonable doubt.

But the oral admissions of defendant in this case are not uncorroborated. There are corroborating circumstances: the prior irritable discussion between the defendant and deceased; the circumstance that Catherine Hendrix was concerned enough about the silence in the back of the apartment to ask Leo Jones to check on it; the circumstance that, when Leo Jones then discovered the shooting, defendant was the only other person in the room and had been the only other person in the back of the apartment from the time when deceased had gone into the back of the apartment; the circumstance that Pinky Henderson had gone out of the kitchen by way of the hallway to the front of the apartment about ten minutes before the "popping noises" had been heard. Hence, the oral admissions, corroborated by the above circumstances, but contradicted by the trial testimony of the defendant, created a credibility issue for the trial judge. *People v. Archie* (1965), 64 Ill.App.2d 78, 212 N.E.2d 324.

■■ Confessions or admissions made to private citizens are admissible into evidence even where an accused has not been given his rights under *Miranda.* (*People v. Hawkins* (1972), 53 Ill.2d 181, 290 N.E.2d 231.) At trial, Leo Jones testified that, immediately upon his entry into the bedroom, defendant said, "I did it." At this time, no one else was present. This spontaneous statement by defendant was properly admitted into evidence. Later, defendant, while being interviewed by a police officer, stated that she had thrown the gun out the window. This statement, made in Jones' presence, was the proper subject of testimony by Jones. Defendant did not, at any time prior to or during trial, object to the introduction into evidence of this statement on the ground that it was involuntary. The failure to raise such an objection either at trial or in a requested pre-trial hearing is a waiver of that issue. (*People v. McGath* (1968), 40 Ill.2d 388, 240 N.E.2d 593.) The State was therefore under no duty to call the police officer present at the time of the questioning.

■■ Defendant also argues that the trial court erred in finding her guilty when the case was entirely circumstantial and no motive was established. The State is not required to prove motive for the commission of the crime charged. (*People v. Dore* (1930), 339 Ill. 415, 171 N.E. 554.) Where, as in the case at bar, the evidence is sufficient to establish defendant's guilt beyond a reasonable doubt, the failure of the State to prove a motive for the shooting does not necessitate a reversal of the conviction.

■■ Defendant's second principal contention is that the trial court erred in admitting into evidence the testimony of Leo Jones as to a statement made by defendant to police under custodial questioning that she had thrown the gun out the window, since that statement was procured in violation of defendant's fifth amendment right against self-incrimination. Defendant urges that there had been no showing that she had been advised of her right pursuant to *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L.Ed.2d 694, 86 S.Ct. 1602, prior to making the statement. A confession or statement to which no such objection is made is properly admitted into evidence without introduction of preliminary proof as to the circumstances under which it was made. (*People v. Jackson* (1964), 31 Ill.2d 408, 202 N.E.2d 465.) Admissions or confessions may be challenged either by preliminary hearing on a motion to suppress or by appropriate objection made at trial. (*People v. Gaddy* (1971), 1 Ill.App.3d 1067, 275 N.E.2d 701.) One who fails to object to the introduction of a statement waives the right to complain on appeal about the admission of the statement into evidence. *People v. Sims* (1965), 32 Ill.2d 591, 208 N.E.2d 569.

■■ In the case at bar, defendant at trial did not make a pre-trial

motion to suppress the statement nor did defendant at any time object to the testimony of Leo Jones regarding the statements made by the defendant on the ground that there had been a failure to give defendant her proper *Miranda* warnings. Under these circumstances, defendant cannot now for the first time on appeal argue that her statements were improperly admitted into evidence.

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

STAMOS and DOWNING, JJ., concur.