# Illinois Official Reports

## Appellate Court

---

### *People v. Robards*, 2018 IL App (3d) 150832

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. REGINA F. ROBARDS, Defendant-Appellant. |
| | |
| District & No. | Third District<br>Docket No. 3-15-0832 |
| | |
| Filed<br>Rehearing denied | March 12, 2018<br>March 28, 2018 |
| | |
| Decision Under Review | Appeal from the Circuit Court of Tazewell County, No. 14-CF-577; the Hon. Paul Gilfillan, Judge, presiding. |
| | |
| Judgment | Affirmed. |
| | |
| Counsel on Appeal | Michael J. Pelletier, Thomas A. Lilien, and Christopher McCoy, of State Appellate Defender's Office, of Elgin, for appellant.<br><br>Stewart J. Umholtz, State's Attorney, of Pekin (Patrick Delfino, Lawrence M. Bauer, and Stephanie L. Raymond, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

JUSTICE HOLDRIDGE delivered the judgment of the court, with opinion.
Presiding Justice Carter and Justice Wright concurred in the judgment and opinion.


# OPINION

¶ 1    The defendant, Regina F. Robards, appeals her conviction for aggravated cruelty to a companion animal, arguing that the State failed to prove her guilty beyond a reasonable doubt.

¶ 2                                    FACTS

¶ 3    On December 23, 2014, the defendant was charged with four counts of aggravated cruelty to a companion animal in violation of section 3.02(a) of the Humane Care for Animals Act (Act) (510 ILCS 70/3.02(a) (West 2014)), alleging that she had intentionally committed an act that caused serious injury or death to her two dogs by depriving them of adequate water and failing to seek adequate medical care for them. The case proceeded to a stipulated bench trial solely on the two counts related to the dogs' deprivation of water.

¶ 4    The stipulated evidence provided that Loretta Joachim would testify that she owned a house on Howard Court in Pekin, Illinois, that she rented to the defendant. The defendant had lived in the Howard Court house for some time but had moved out in July 2014 and came to live with Joachim at her personal residence. When the defendant moved out of the Howard Court house, she left her two dogs, Walker and Sparky, living at the Howard Court house. "[The defendant] told Ms. Joachim that she was going to the house on Howard every day to take care of the dogs. And Ms. Joachim would testify that she had reason to believe that [the defendant] was returning to that residence on a regular basis."

¶ 5    On November 24, 2014, Joachim went to check on the Howard Court house. When she entered the house, "she found extremely poor conditions there." "She would testify that she observed feces and urine on the floors as well as extensive damage to the walls and floors of the home." Joachim called the police. The police officers who responded would also testify as to the condition of the house. "Officers and Ms. Joachim would both testify that they observed inside that residence an emaciated, gaunt and obviously deceased dog on the floor of the living room." Joachim and the officers would testify "that there was no water source available in the home and there was no water anywhere in the home available for drinking or for consumption." According to the officers, the defendant stated "that she had seen this particular dog alive four days earlier; but later had found it had died."

¶ 6    On November 29, 2014, Joachim again contacted the police, who subsequently went to the Howard Court house.

     "Joachim and the officers would all testify that they had again observed a second dog that was obviously dead lying in a garbage bag in the back bedroom of the residence. They would all testify that the dog's skeleton was visible through its skin and fur. It was extremely emaciated; and again, that the conditions in the home *** were deplorable."

On this occasion, the defendant told the officers "that the second dog was named Sparky and that she had been caring for it at the Howard Court residence."

¶ 7    Tazewell County Animal Control officers would testify that they removed each dog from the Howard Court house after each was discovered and took them back to animal control. "They each would also testify as to the conditions in the house being extremely unsanitary. And they would also testify as to the extremely wasted, emaciated and poor conditions of the dogs that were found at the residence."

¶ 8    Veterinarian Joel Jess would testify that he had seen Walker, the first dog found, at his clinic in March and April 2014 but not since that time. "[A]t that time, Walker was in good physical condition and had no immediate health concerns." According to defense counsel, in April 2014, Jess had written a prescription "for some kind of ringworm or something or other," and the records contained a note that the defendant "was concerned about the dog's weight."

¶ 9    Veterinarian Arthur Herm would testify that he had examined both of the dogs postmortem. "[B]oth of them had no evidence of any kind of disease, no evidence of cancer, no evidence of viral or bacterial infection, no evidence of any sort of parasites; and that both of them were determined to have their death caused by dehydration and starvation due to a lack of access to water." Herm would further testify "regarding the condition of dehydration and that it's a condition that is easily remedied when a dog is provided timely access to medical treatment."

¶ 10    The defendant stipulated to the evidence presented by the State but stated that she did not believe the evidence was sufficient to convict. The defendant further stipulated that she "was the only person caring for the dogs, had been caring for them and was responsible for their care." The court found the defendant guilty of both counts of aggravated cruelty to a companion animal, stating,

> "[B]ased on that stipulated evidence, [the defendant] was the party in charge of the care of the dogs and her actions were intentional in that she did not physically kill the dogs as if by gun or some weapon, but rather her acts were intentional in that the death of the dogs was reasonably expected to follow from her voluntary actions of leaving them alone and depriving them of adequate water."

The defendant was sentenced to 12 months' probation, with the condition that she not care for, own, or provide for any companion animals during that time.

¶ 11                                ANALYSIS

¶ 12    On appeal, the defendant argues that she was not proven guilty beyond a reasonable doubt. Specifically, the defendant argues that the evidence regarding her intent in committing the crime was insufficient to convict her for aggravated cruelty to a companion animal.

¶ 13    Section 3.02(a) of the Act states, in relevant part: "No person may intentionally commit an act that causes a companion animal to suffer serious injury or death." 510 ILCS 70/3.02(a) (West 2014). Therefore, in order to be convicted of aggravated cruelty to a companion animal, the State must prove both that the defendant (1) intentionally committed the act and (2) intended to seriously injure or kill the animal. *People v. Lee*, 2015 IL App (1st) 132059, ¶ 51. Under the statute, the "act" requirement includes " 'an omission to perform a duty.' " *People v. Land*, 2011 IL App (1st) 101048, ¶ 121 (quoting 720 ILCS 5/4-1 (West 2006)). The

defendant does not dispute that she intentionally committed an act but solely argues that the State did not prove that she intended to seriously injure or kill the dogs.

¶ 14    Because intent is a mental state, it can rarely be proven by direct evidence. *People v. Witherspoon*, 379 Ill. App. 3d 298, 307 (2008). Instead, circumstantial evidence from the surrounding circumstances, the character of the acts, and the nature and seriousness of the injury is often the only way to prove intent. *People v. Williams*, 165 Ill. 2d 51, 64 (1995); *People v. Rudd*, 2012 IL App (5th) 100528, ¶ 14. Our supreme court has held that every individual intends " ' "all the natural and probable consequences flowing from his own deliberate act." ' " *People v. Smith*, 402 Ill. App. 3d 538, 547 (2010) (quoting *People v. Koshiol*, 45 Ill. 2d 573, 578 (1970), quoting *People v. Coolidge*, 26 Ill. 2d 533, 537 (1963)).

¶ 15    Here, the evidence presented at the stipulated bench trial showed that (1) the defendant moved out of the Howard Court house in July but kept her dogs there until they died in November, (2) the defendant "was the only person caring for the dogs, had been caring for them and was responsible for their care," (3) the defendant told Joachim that she was going to the Howard Court house every day to care for the dogs, (4) there was no water source available anywhere in the house, (5) the cause of the dogs' death was determined to be "dehydration and starvation due to a lack of access to water," and (6) there was no evidence that the dogs had any sort of disease, infection, parasite, or cancer. The court could have inferred from the evidence presented that the defendant knew she needed to feed and water her dogs or they would die. See *In re Jonathon C.B.*, 2011 IL 107750, ¶ 60 (the trier of fact need not disregard inferences that normally flow from the evidence or to seek all possible explanations consistent with the defendant's innocence and elevate them to reasonable doubt). The natural consequence of not feeding or providing water to pets is that they will die, particularly when they are locked in a house without outdoor access. As a person intends "the natural and probable consequences of his acts" (*People v. Terrell*, 132 Ill. 2d 178, 204 (1989)), it follows that the defendant had the requisite intent necessary to be found guilty of aggravated cruelty to a companion animal. Therefore, taking the evidence in the light most favorable to the State (see *People v. Collins*, 106 Ill. 2d 237, 261 (1985)), a rational trier of fact could have found all of the essential elements of the crime beyond a reasonable doubt.

¶ 16    In coming to this conclusion, we reject the defendant's reliance on *Lee* and *Land* for the proposition that it was necessary for the State to present evidence (1) that the defendant had prior notice that her conduct was improper and (2) regarding the length of time the conditions would have had to persist for the dogs to die. *Lee*, 2015 IL App (1st) 132059; *Land*, 2011 IL App (1st) 101048. In *Lee*, the defendant was charged with aggravated cruelty to a companion animal when several horses were found on his property locked in stalls filled with several feet of petrified manure with no visible food or water. *Lee*, 2015 IL App (1st) 132059, ¶¶ 8-11. He had been issued a citation one year earlier for the poor condition of the horses. *Id.* ¶ 32. In *Land*, the defendant was charged with aggravated cruelty to a companion animal for using a heavy tow chain on her dog's neck, which became embedded in the dog's neck, resulting in his euthanasia. *Land*, 2011 IL App (1st) 101048, ¶¶ 5, 28. Four months earlier a police officer had told the defendant, when responding to a citizen's complaint, that the collar was not proper. *Id.* ¶ 27.

¶ 17    First, the additional evidence presented in *Lee* and *Land* is not necessary to obtain a conviction under section 3.02(a) of the Act. The evidence need only establish that the defendant intentionally committed an act that caused the death of a companion animal. See 510

ILCS 70/3.02(a) (West 2014). Both elements were proven beyond a reasonable doubt in the instant case. *Supra* ¶ 16. Second, the evidence of prior notice in *Lee* and *Land* showed that those two defendants knew that their conduct was improper. Here, the defendant told Joachim that she was going to the Howard Court house every day to care for the dogs. Therefore, it can be inferred that she knew she needed to provide them with food and water, yet the subsequent state of the dogs shows that she failed to do so. Third, regarding the length of time the conditions had to have persisted, the court in *Lee* noted that there was no testimony regarding how long it would have taken for the manure to pile up but that, based on the amount of manure, the jury could have concluded that the "conditions persisted over a very lengthy period of time." *Lee*, 2015 IL App (1st) 132059, ¶ 56. Similarly, based on the emaciated and gaunt condition of the dogs and the fact that they died from starvation and dehydration, the court could have concluded that they were without food and water for some time.

¶ 18    We further reject the defendant's contention that "[t]here was no evidence of a possible motive or any suggestion why [the defendant] would want to harm her dogs." Proof of motive for the commission of a charged crime is not required. *People v. Reed*, 23 Ill. App. 3d 686, 693 (1974).

¶ 19    Finally, we would be remiss if we did not note that the defendant is very fortunate to have only received a sentence of 12 months' probation for these heinous crimes. Each Class 4 felony carries a sentence of up to 3 years or up to 30 months' probation. 730 ILCS 5/5-4.5-45 (West 2014). We take issue with the fact that the circuit court found as a factor in mitigation that the "defendant's conduct did not cause or threaten serious physical harm to another person." Section 5-5-3.1(a)(1) of the Unified Code of Corrections states that one factor in mitigation is, "The defendant's criminal conduct neither caused nor threatened serious physical harm to *another*." (Emphasis added.) *Id.* § 5-5-3.1(a)(1). Assuming *arguendo* that the word "another" in section 5-5-3.1(a)(1) refers only to another human being, as opposed to an animal, this mitigating factor should have no application in this case. The defendant was convicted of aggravated cruelty to a companion animal in violation of section 3.02(a) of the Act. That section prescribes the commission of any act that "causes *a companion animal* to suffer serious injury or death." (Emphasis added.) 510 ILCS 70/3.02(a) (West 2014). It does not address acts that cause harm to human beings. Nor does it condition punishment for animal cruelty on proof of harm to a human being or provide for enhanced penalties in cases involving harm to human beings. Harm to a human being is neither an element of the offense nor a statutory aggravating factor. Thus, it makes no sense to consider the absence of harm to a human being as a mitigating factor in cases involving aggravated cruelty to a companion animal. In arguing for mitigation on this ground, a convicted defendant is essentially saying, "Yes, I abused and killed a dog, but at least I didn't abuse and kill the owner too." While such restraint should be applauded, it does not support a reduced sentence for aggravated cruelty to a companion animal. In this case, the defendant abandoned her dogs and left them alone to die. There can be no doubt that the defendant's acts caused serious physical harm and death to two sentient creatures that suffered greatly from terminal starvation and dehydration, which the defendant callously inflicted on them. We find the circuit court's sentence of 12 months' probation to be unjustly and inexplicably lenient. If it were up to this court to impose a sentence, the defendant would likely be facing a harsher penalty.

¶ 20                                    CONCLUSION

¶ 21            The judgment of the circuit court of Tazewell County is affirmed.

¶ 22            Affirmed.